GALEY BROTHERS v. FRED. KELLERMAN.

ERROR TO THE COURT OF COMMON PLEAS NO. 1 OF ALLEGHENY COUNTY.

Argued November 5, 1888—Decided January 7, 1889.

*(a)* The lessees in an oil lease covenanted to commence operations within sixty days from the date of the lease, and to complete one well within three months thereafter; and, in case of failure to complete one well in said time, they covenanted to pay the lessor for such delay the sum of $1,000 per annum within three months after the time of completing such well.

*(b)* It was also covenanted by the parties that a failure to complete one

| 123 | 491 |
| 130 | 233 |
| 123 | 491 |
| 136 | 514 |
| 123 | 491 |
| 138 | 589 |
| 138 | 593 |
| 123 | 491 |
| 116 | 211 |
| 123 | 491 |
| 151 | 650 |
| 123 | 491 |
| 158 | 404 |
| 123 | 491 |
| 159 | 187 |

well or to make such payment within said time, "renders this lease null and void, and to remain without effect between the parties hereto." The lessees did nothing towards drilling a well, nor did they make payment within three months after it should have been completed:

1. In such case, a forfeiture of the lease did not happen until default made by the lessees both in completing the well and in paying for the delay or failure to complete it.

2. The lessees having neither drilled the first well nor paid the price of delay, according to the terms of the contract, the lessor was entitled to recover at the stipulated rate for the time the lessees held the exclusive right to operate.

Before Gordon, C. J., Paxson, Green, Clark, Williams and Hand, JJ.; Sterrett, J., absent.

No. 216 October Term 1888, Sup. Ct.; court below, No. 15 December Term 1886, C. P. No. 1.

On September 9, 1886, a summons in covenant was issued in an action by Frederick Kellerman against John, Samuel, Robert and William Galey, doing business as Galey Brothers.

The paper books filed contained neither the declaration, the plea, the affidavits of claim and defence, nor the testimony; but a lease was printed in the appendix, dated December 28, 1885, between Frederick Kellerman, of Allegheny county, of the first part, and Galey Brothers, Rochester, Pa., of the second part whereby "in consideration of the stipulations, rents and covenants hereinafter contained, on the part of the said parties of the second part, their," etc., the party of the first part demised to the parties of the second part, for the sole and only purpose of drilling and operating wells, and storing, transporting and conveying petroleum oil or gas through, over and from it, a certain tract of land in Bridgwater borough, Beaver Co., containing three acres, more or less. The lease contained the following paragraphs:

" To have and to hold the said premises, for the said purpose only, unto the parties of the second part, their executors, administrators and assigns, for, during and until the full term of ten years next ensuing the day and year above written, on express condition that one well be completed each year during said term, at lessor's option.

  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;  &ast;

" Operations on the above described premises shall be com-

menced in 60 days and one well completed within three months therefrom, and in case of a failure to complete one well within such time, the said parties of the second part hereby agree to pay to party of the first part, for such delay, the sum of ten hundred dollars per annum, within three months after the time for completing such well, as above specified, payable at T. Mellon & Sons Bank; and the party of the first part hereby agrees to accept such sum as full consideration and payment for such yearly delay until one well shall be completed, and a failure to complete one well or to make any of such payments within such time and at such place as above mentioned, renders this lease null and void, and to remain without effect between the parties hereto."

\* \* \* \* \* \* \* \*

It appeared on the argument in this court, that the times provided in the lease for the completing of a well, or for making the payment provided for, to wit: May 28, 1886, and August 28, 1886, having fully expired without anything done by the lessees, the plaintiff made demand from the defendants and at T. Mellon & Sons Bank for the stipulated payment, which was refused, whereupon he brought this suit " for the recovery of the penalty for delay mentioned in the lease, or the proportionate amount thereof, for such length of time as he had been deprived of the exclusive right to his property thereby, viz.: eight months."

The court, STOWE, P. J., charged the jury as follows:

Counsel for defendants asks the court to charge the jury:

1. That there can be no recovery in this case, because at the time of bringing this suit the contract or lease sued on was null and void, and not in existence; that the non-payment of the rent claimed in this case, instantly upon its non-payment and ipso facto, rendered the lease null and void.

Answer: Refused.

2. The $1,000 payable under the lease in lieu of the completion of the first well, not being agreed upon as liquidated damages by the parties to the lease, there can be a recovery for only a proportion of it, to wit: that proportion of one year during which the part they had possession, bears to the whole year, or, in other words, one fourth of one thousand dollars.

Answer : Refused.

We instruct you as matter of law that the plaintiff is entitled to recover in this case five twelfths of one thousand dollars.

The jury returned a verdict in favor of the plaintiff for $458.32. A rule for a new trial having been discharged, the defendants took this writ and assigned as error the instruction to the jury that the plaintiff was entitled to recover, as above given.

*Mr. W. F. McCook*, for the plaintiffs in error :

If the plaintiff can compel the defendants to execute the lease in damages, it must be upon the theory that the lease is subsisting. But the contract of the parties expressly declares that it does not exist. The instant the breach takes place the contract is at an end ; so completely at an end, that the courts have intimated that the subsequent payment and acceptance of rent will not revive the estate and that the statute of frauds would require a new writing. Any other interpretation would give the landlord both his rent and his land. It would allow the lessee to default in his covenant, and, if oil was afterwards discovered, to tender his past rent and demand back his estate under the lease. That the breach absolutely and ipso facto annuls the estate and cancels the contract, is expressly decided in Brown v. Vandergrift, 80 Pa. 142.

*Mr. Winfield S. Wilson* (with him *Mr. James H. Porte*), for the defendant in error :

From December 28, 1885, to August 28, 1886, a period of eight months, during which time it would have been impossible for plaintiff to declare a forfeiture, the defendants had the right to the exclusive possession of the premises demised, for the purpose of exploring for oil and gas. This right was not a mere license : Kitchen v. Smith, 101 Pa. 457. During that period of eight months, the defendants could discharge themselves from their covenants only by a surrender, a release, or an eviction : Breuckmann v. Twibill, 89 Pa. 58. Brown v. Vandergrift, 80 Pa. 142, is against the defendants, for it recognizes an option in the lessor to refuse the tender of rent after default and to insist upon a forfeiture, and that equity

abhors a forfeiture when it works a loss that is contrary to equity, not when it works equity and protects a lessor against the laches of the lessee. This case is settled by Shettler v. Hartman, 1 Penny. 279.

OPINION, MR. JUSTICE WILLIAMS:

This action is brought upon a contract known as an oil lease. By its terms the lessees acquired the right to enter upon the tract of land therein described, and drill and operate wells for the production of oil or gas on said tract for a period of ten years, rendering to the lessor as rent or royalty one sixth of all oil produced, if oil was found, and if gas was produced in sufficient quantities to be utilized, one sixth of the value of the gas so produced and one thousand dollars per well in addition. The lessees further covenanted to commence operations upon the land within sixty days from the date of the lease ; to complete one well within three months thereafter, and one additional well each year during the continuance of the lease. The following stipulation raises the only question which the case presents: "In case of a failure to complete one well within such time, the said parties of the second part agree to pay the party of the first part for such delay the sum of ten hundred dollars per annum within three months after the time for completing such well; . . . . . and the party of the first part hereby agrees to accept such sum as full consideration and payment for such yearly delay until one well shall be completed, and a failure to complete one well or to make any such payments within such time and at such place as above mentioned, renders this lease null and void, and to remain without effect between the parties hereto."

The lessees wholly disregarded their agreement. They neither drilled the first well nor paid the money fixed upon as the price of delay by the terms of the contract, and now they allege that their failure to perform their covenants operates to absolve them from all legal liability upon their contract, and from any claim for damages for past non-performance. The argument is that inasmuch as the contract provides that a failure to complete one well, or to pay the ten hundred dollars per annum agreed upon as the price of delay, shall "render this lease null and void," it must be treated as void, not

from and after the default which renders it void, but ab initio, so that a cause of action accrued before the default or by reason of it is extinguished. This construction overlooks the character of the agreement and the relation of its covenants. The lessees secured by it the exclusive right to operate for oil and gas on the land described. On their part and as a consideration for the grant to them, they agreed to begin operations on the land within sixty days, and within three months were to complete the first well. If they failed to do as they agreed as to the beginning and completion of the first well, they promised to pay for their delay at the rate of ten hundred dollars per annum. If they neither developed the land nor paid for their delay, they were by such disregard of their contract to forfeit all their rights under it, and the lease was to be rendered thereby null and void. But the forfeiture did not happen until default made both in completing a well and in paying for the delay or failure to complete it. This required a period of eight months, during which the lessor and his land were tied up by the contract.

The lessees had the right to enter at any time during the eight months and either drill a well or make the stipulated payment. If they did neither, within the time limited, their right of entry was extinguished and the contract itself was at an end. But the acts that forfeited their rights did not also forfeit those of the lessor. Their liabilities growing out of their non-performance are to be distinguished from their rights under the contract. The latter they could forfeit, but the former belonged to the lessor and could be lost only by his act. The lessees promised to complete one well within a given time. This was for the benefit of the lessor. If this was not done he was to be compensated in money. If the money was not paid he was at liberty to rid himself of his tenants and resume the possession of his land. But the construction contended for by the plaintiffs in error transfers the punishment for the breach of the contract from him on whose default it arises, to the innocent injured party. Because the lessees have secured the control of the land of the lessor by covenants which they have broken, the lessor shall be deprived of all redress at law by the very acts of his lessees which give him a cause of action. Their default takes away his remedy.

The acts or omissions of which he complains are an answer to his complaint. We should need the constraint of insurmountable necessity to induce us to adopt the construction contended for.

The judgment is affirmed.

